In the Matter of the Estate of JOHN SEIFERT, Deceased.

Surrogate's Court, New York County, August 12, 1932.

*Leo T. Kissam* [*J. Francis Hayden* of counsel], for the petitioner.

*Gray & Grossman* [*Herman A. Gray* and *Louis J. Naftalison* of counsel], for the respondent.

FOLEY, S. In this discovery proceeding the administrator, the son of the decedent, seeks to recover from the respondent three savings bank accounts established by the decedent in trust for the respondent. It has been established without dispute that the respondent, Mary Ellen O'Malley, also known as Mary Ellen Seifert, was married in 1916 to Martin O'Malley. Subsequently he was committed to the Matteawan State Hospital, an institution maintained for the care and treatment of the criminal insane.

O'Malley is still a patient at that institution. In September, 1930, in Newark, N. J., the respondent married the decedent, John Seifert. In October, 1930, he opened a savings bank account in the name of " John Seifert in trust for Mary Seifert, wife." In November of that year he opened a second account in the name of " John Seifert in trust for Mary E. Seifert," without any further description. In March, 1932, he opened a third account in the name of " John Seifert in trust for Mary E. Seifert, wife." The contention of the administrator is that the respondent falsely represented to the decedent that she was free to marry him; that at that time she willfully misrepresented the fact that her husband was alive; that the gifts and trusts created by the decedent for her in the form of the savings bank accounts were procured by her fraudulent representations and concealment of the true facts, and that thereby they were void. The administrator, therefore, contends that the funds are the property of the estate.

The evidence fails to sustain these contentions. Undoubtedly the alleged second marriage was void because of the fact that the respondent had a husband living at the time she married the decedent. It has been clearly shown, however, to my satisfaction, that the decedent was fully aware of this impediment and entered into the alleged marital relationship with knowledge of the existence of the first marriage and of the fact that the respondent's first husband was at the time in the Matteawan State Hospital. Two disinterested witnesses, Doctor Merker and Mr. Scoville, convincingly testified that the decedent was aware of these facts prior to, or at the time of his marriage. The motives of the decedent and the respondent in going through the marriage ceremony in New Jersey are immaterial. The ceremony may have been intended to cloak their meretricious alliance.

I find no evidence of any innocence on the part of the decedent, nor does the record disclose any proof of misrepresentation on the part of the respondent relied upon by the decedent and furnishing the inducing cause of the New Jersey wedding. Further evidence of the knowledge of the decedent of the true conditions is found in the indorsement by John Seifert of certain checks after the date of the New Jersey marriage. These checks were paid monthly as a mother's pension to the respondent by the board of child welfare of the city of New York. Sixteen of them are in evidence. On each of them the respondent was required to certify that her minor children were living with her and that her status was the same at the date of payment as at the time of the original application. Pension allowance was made to her upon the theory that her husband was insane. The checks also contain a certificate which

was required to be signed by two witnesses, which stated: " I certify that I know the above individual and have full knowledge that she has not remarried and that her minor children are still in her personal care and are still living with her, and that her status is unchanged." John Seifert signed this certificate for the respondent on four of the checks dated between November, 1930, and February, 1931. In addition he indorsed several other checks with his signature appearing below the required certificate of the pensioner and the two witnesses. This course of conduct on his part clearly negatives any imposition upon him by the respondent and establishes to my satisfaction that the trust accounts were opened by him voluntarily. In one of these accounts no reference is made to her as his wife. In the other two she is so described. That description, however, is immaterial in view of the ceremony that he had gone through with her and the fact that he had held her out to his friends as his wife.

Nor is there any evidence whatsoever in the record of undue influence tending to void the transfer. The existence of meretricious relations as between a donor and donee, in the absence of proven undue influence, does not furnish a basis for the recovery of gifts. (*Platt* v. *Elias*, 186 N. Y. 374.) The bank books themselves are significant since they show that out of the three accounts, extending over a period of eighteen months, only one relatively small withdrawal was made by the decedent. The other moneys remained intact until the tentative trusts became complete at his death.

I hold that the moneys are the property of the respondent and that delivery to the estate account may not be decreed. The discovery proceeding is dismissed upon the merits. Submit decree on notice.